**2018 UT App 83**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF E.A., N.L., E.L., AND J.L.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

S.A.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20180060-CA
Filed May 3, 2018

Third District Juvenile Court, Salt Lake Department
The Honorable Kimberly K. Hornak
No. 1106080

Christopher M. Ault and Anthony M. Saunders,
Attorneys for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES DAVID N. MORTENSEN, DIANA HAGEN, and RYAN
M. HARRIS.

PER CURIAM:

¶1 S.A. (Mother) appeals the juvenile court's order terminating her parental rights. Mother asserts that the juvenile court erred in finding multiple grounds for termination based solely on Mother's failure to complete the requirements of her service plan. Because the juvenile court's termination order is inadequate to demonstrate grounds for termination and the evidence presented at trial was insufficient to support the

juvenile court's conclusion that termination is warranted, the juvenile court's order is reversed.

¶2     Whether a parent's rights should be terminated is a mixed question of law and fact. *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. The ultimate conclusion that a parent is unfit or that other grounds for termination have been established is a legal question, "but such decisions rely heavily on the juvenile court's assessment and weighing of the facts in any given case." *Id.* Because of the factually intense nature of parental termination proceedings, "the juvenile court's decision should be afforded a high degree of deference." *Id.* Accordingly, to overturn a juvenile court's decision, it must be "against the clear weight of the evidence." *Id.* "When a foundation for the [juvenile] court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3     "It has long been the law in this state that conclusions of law must be predicated upon and find support in the findings of fact[.]" *Gillmor v. Wright*, 850 P.2d 431, 436 (Utah 1993). "In considering whether to terminate parental rights—and to permit meaningful appellate review of the [juvenile] court's ultimate determination—the [juvenile] court's findings must be sufficiently detailed and include enough subsidiary facts to clearly show the evidence upon which they are grounded." *In re adoption of A.M.O.*, 2014 UT App 171, ¶ 19, 332 P.3d 372 (citation and internal quotation marks omitted). Here, because the juvenile court's findings "provide no insight into the evidentiary basis" for its decision, the findings are inadequate. *Id.* ¶ 22 (citation and internal quotation marks omitted).

¶4     The juvenile court's termination order consists largely of a recitation of the procedural history of the case and prior minute entries from various hearings. Those paragraphs provide no insight into the evidentiary basis to support grounds for termination. The procedural recitation shows that Mother was

ordered to participate in therapy multiple times. But there is no presentation of any underlying evidence to indicate the reason for the orders or to support the termination of Mother's parental rights.

¶5    The primary focus of the termination order is that Mother did not comply with her service plan, specifically in failing to engage meaningfully in individual therapy as required by the recited prior court orders. However, there are no subsidiary factual findings regarding Mother's psychological evaluation, diagnosis, follow-up recommendations, or level of impairment due to mental health issues. Nor are there any facts setting out how Mother's mental illness actually affected the children or impacted Mother's ability to care for them. In determining whether a parent is unfit, a juvenile court must consider whether the parent suffers from a mental illness "that renders the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time." Utah Code Ann. § 78A-6-508(2)(a) (LexisNexis Supp. 2017). The mere presence of a mental illness does not, without more, render a parent unfit. There are no factual findings that support a determination that Mother's mental illness rendered her unable to care for her children.

¶6    The juvenile court's additional findings of fact primarily indicate that Mother failed to produce evidence at trial to support her own claims of pursuing therapy, taking appropriate medication, and obtaining suitable housing for her children. "While the petitioner bears the ultimate burden of proving the grounds for termination by clear and convincing evidence, once evidence is presented that would justify termination, the burden shifts to the parent to persuade the court that the petitioner had not established grounds for termination by clear and convincing evidence." *In re K.J.*, 2013 UT App 237, ¶ 26, 327 P.3d 1203 (quotation simplified). Accordingly, in some circumstances, a juvenile court is justified in requiring a parent to offer evidence,

including supporting documentation. However, in this case, there was not sufficient evidence presented to shift the burden to Mother. As a result, the findings about Mother's lack of documentation to confirm her testimony are insufficient to support termination of her parental rights.

¶7      There may be situations where a court's "findings could be adequately supported by the evidence but nevertheless insufficiently detailed to disclose the steps by which the judge reached his or her conclusions." *In re K.F.*, 2009 UT 4, ¶ 62, 201 P.3d 985 (citation and internal quotation marks omitted). The current case is not one of those situations. The transcript of the termination of parental rights trial is the primary evidentiary record before this court. After review of the transcript, it is apparent that there is a lack of evidence to support the termination of Mother's parental rights.

¶8      The juvenile court has been involved with Mother's case for more than one year and has had access to more information regarding Mother's service plan and compliance, including the service plan, evaluations, comments from parties, and reports from caseworkers regarding the children's situation and progress. With that additional information, the juvenile court may have identified concerns and may have believed that termination of Mother's parental rights is warranted. But, an appellate court's "power of review is strictly limited to the record presented on appeal." *In re adoption of A.M.O.*, 2014 UT App 171, ¶ 12 (citation and internal quotation marks omitted). Here, the record lacks sufficient information to support the juvenile court's decision.

¶9      Neither the service plan nor Mother's psychological evaluation were offered into evidence at trial. There was no testimony about how Mother's mental illness affected her ability to parent. There was no testimony from a caseworker regarding the children's physical or emotional condition when removed or

any progress since that time. Although there was testimony that Mother missed as many as a dozen visits, there was no testimony about how that affected the children. To the contrary, the therapist who supervised Mother's most recent visits testified that Mother's interactions with the children were appropriate and healthy. The therapist also stated that the main concern for the children's safety was not Mother but Father, who had relinquished his rights to the children before trial.

¶10 Additionally, the juvenile court's finding that housing remained an issue is against the weight of the evidence. Mother testified about her current housing and her ability to obtain a larger space if the children were returned. The caseworker testified that a prior caseworker had found the housing likely appropriate and that a walk-through would be needed closer to the time of transition. The State conceded in closing argument that housing was no longer an issue. There was no real dispute at trial that Mother had both a job and housing.

¶11 The State and the Guardian ad Litem argue that Mother's failure to comply with her service plan was not the sole basis for the termination of her parental rights, but rather was evidence of failure of parental adjustment and was sufficient to warrant termination of Mother's parental rights. Failure of parental adjustment "means that a parent . . . [is] unable or unwilling within a reasonable time to substantially correct the circumstances, conduct, or conditions that led to placement of [the children] outside of their home," even after receiving reunification services. Utah Code Ann. § 78A-6-502(2) (LexisNexis 2012). In Mother's case, the circumstances of the children's removal, as stated in the adjudication order and the termination order, were that Father left the children unattended, that when law enforcement came the officers determined Mother was unable to care for the children at that time, and that the home was below minimum standards. Mother now has housing and employment and was released from the requirement to test

for illicit substances that may have contributed to non-supervision early in the case. Although the service plan apparently included a mental health component, as previously noted, there was no evidence presented to connect Mother's mental health issues with either the removal or the ongoing status of the children. As a result, Mother's failure to comply with the service plan on its own does not support a determination of failure of parental adjustment, nor does it support other grounds for termination. *See* Utah Code Ann. § 78A-6-507(2).

¶12  In sum, the juvenile court's termination order is inadequate to support termination because it lacks sufficient subsidiary facts that lead to and support the juvenile court's decision. Furthermore, the evidentiary record developed at trial is insufficient to support the termination order. Accordingly, the order terminating Mother's parental rights is reversed and this matter is remanded for further proceedings.

_____